## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

05 APR 22  AM 9: 04

CLERK-SANTA FE

| | |
|---|---|
| THE STATE OF NEW MEXICO ex rel.<br>GOVERNOR BILL RICHARDSON;<br>ATTORNEY GENERAL PATRICIA MADRID;<br>NEW MEXICO ENERGY, MINERALS AND<br>NATURAL RESOURCES DEPARTMENT;<br>NEW MEXICO DEPARTMENT OF GAME AND<br>FISH; and NEW MEXICO ENVIRONMENT<br>DEPARTMENT; and KATHERINE SLICK,<br>New Mexico State Historic Preservation Officer, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) |
| BUREAU OF LAND MANAGEMENT;<br>KATHLEEN CLARKE, Director, Bureau<br>of Land Management; LINDA RUNDELL,<br>New Mexico State Director, Bureau of Land<br>Management, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

No. **CIV – 0 5 – 0 4 6 0   RHS**

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This action, brought by the State of New Mexico through its Governor Bill

Richardson, Attorney General Patricia Madrid, three state agencies, and the New Mexico

State Historic Preservation Officer ("the State of New Mexico"), seeks declaratory and

injunctive relief for multiple violations of federal law by the Defendants, Bureau of Land

Management ("BLM"), its Director, Kathleen Clarke, and BLM New Mexico State

Director Linda Rundell, committed in connection with the BLM's January 24, 2005,

approval of the Record of Decision and Resource Management Plan Amendment for

Federal Fluid Minerals Leasing and Development in Sierra and Otero Counties ("Final

Otero Mesa RMPA").  The State of New Mexico seeks relief under the Federal Land

Policy Management Act, 43 U.S.C. § 1701, *et seq.* ("FLPMA"), the National

Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* ("NEPA"), the National Historic

Preservation Act, 16 U.S.C. § 470, *et seq.* ("NHPA"), and the Administrative Procedure

Act, 5 U.S.C. § 701, *et seq.* ("APA").

2.      The Otero Mesa and Nutt grasslands areas in southern New Mexico are part of the

Chihuahuan Desert ecosystem, one of the most biologically diverse and endangered arid

regions in the world.  The area also contains a sensitive and substantial underground

water aquifer, as well as an abundance of cultural and environmental resources not found

anywhere else in New Mexico.

3.      In October 2000, the BLM issued a Draft Resource Management Plan

Amendment ("RMPA") and Draft Environmental Impact Statement ("EIS") for oil and

gas leasing within the Otero Mesa and surrounding areas in Sierra and Otero Counties

(referred to herein as the "Project Area").  That Draft Otero Mesa RMPA called for

significant protections of the Otero Mesa and Nutt grasslands areas, while still allowing

for oil and gas development.  More than three years later, in December 2003, the BLM

issued a Final EIS and Proposed Otero Mesa RMPA with a completely different plan that

provided only a tiny fraction of the protection the earlier proposal provided. The BLM's

Final Otero Mesa RMPA, approved in January 2005, incorporates that new plan with

very minor changes.  It will open up the vast majority of Otero Mesa and surrounding

areas to oil and gas leasing, with associated well pads, pipelines, roads, and related

facilities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 2

4.      Faced with BLM's policy reversal and refusal to provide necessary protections for

the sensitive Chihuahuan Desert grasslands, Governor Richardson developed a far more

protective plan for the Project Area and requested that the BLM adopt that plan.  The

Governor also pointed out the numerous respects in which the BLM's plan was

inconsistent with State plans, policies, and programs.  BLM refused to adopt the

Governor's plan and simply dismissed his claims of inconsistency with State plans,

programs, and policies.

5.      By rejecting Governor Richardson's plan and instead adopting the Otero Mesa

RMPA, the BLM violated FLPMA, NEPA, and the APA in the following respects:

       a)      BLM violated FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9)) and 43

              C.F.R. § 1610.3-2 by adopting an RMPA for the Project Area that is

              inconsistent with State plans, programs, and policies, and by refusing to

              adopt any or all of Governor Richardson's proposed plan for oil and gas

              leasing in the Project Area, even though the Governor's plan provides a

              reasonable balance between state interests and national interests;

       b)      BLM violated FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9)) and 43

              C.F.R. § 1610.3-2 by failing to provide the public with the Governor's

              proposed Otero Mesa plan and with an opportunity to comment on the

              Governor's plan;

       c)      BLM violated FLPMA Section 202(c)(3) (43 U.S.C. § 1712(c)(3)) by

              failing to give priority to the designation of areas of critical environmental

              concern and by failing to designate the Otero Mesa and Nutt grasslands as

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 3

areas of critical environmental concern in connection with adoption of the Otero Mesa RMPA;

d) BLM violated NEPA and 40 C.F.R. § 1502.9(c) by failing to prepare a Supplemental Draft EIS on the December 2003 Proposed RMPA because it contained substantial changes to the originally proposed plan analyzed in the October 2000 Draft EIS and because there were significant new circumstances and information bearing on the proposed action and its impacts;

e) BLM violated NEPA by failing to adequately analyze the environmental impacts of the Otero Mesa RMPA, including but not limited to the cumulative impacts of the RMPA, and the impacts to ground and surface water, air quality, cultural resources, wildlife, and to the sensitive Chihuahuan Desert grasslands of Otero Mesa and the Nutt area.

f) BLM violated NEPA by failing to prepare an EIS that analyzed a range of reasonable alternatives to the Proposed Otero Mesa RMPA;

g) BLM violated the NHPA by failing to commence and complete consultation under NHPA Section 106 on the effects of the Otero Mesa RMPA on cultural, historic, and archaeological resources in the Project Area;

h) BLM violated the NHPA by failing to develop a program for the identification and preservation of historic and cultural sites in the Project Area; and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 4

i)      BLM acted arbitrarily and capriciously and in violation of the APA by

approving the Otero Mesa RMPA and Record of Decision on the basis of

an EIS that is legally inadequate and other evidence in the record that does

not support the BLM's decision;

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal

question), 28 U.S.C. §§ 2201-2 (declaratory judgment and injunctive relief), and the

APA.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because

this is an action against United States agencies and officials and because a substantial part

of the events and omissions giving rise to the claims in this case occurred in New

Mexico.

## PARTIES

8.      Plaintiffs are the State of New Mexico on the relation of Governor Bill

Richardson; Attorney General Patricia Madrid; the New Mexico Energy, Minerals and

Natural Resources Department; the New Mexico Department of Game and Fish; the New

Mexico Environment Department; and Katherine Slick, the New Mexico State Historic

Preservation Officer.  The State of New Mexico has not waived its immunity to suit in

federal court and does not waive its immunity to any counterclaim that may be brought

against the State or any of the named agencies or officials by filing this action.

9.      Bill Richardson is the duly elected Governor of the State of New Mexico and

brings this suit pursuant to his authority under the New Mexico Constitution, Art. V, § 4.

10.     Patricia Madrid is the duly elected Attorney General of the State of New Mexico

and brings this suit pursuant to her authority under the New Mexico Constitution, Art. V,

and NMSA 1978, § 8-5-2, which authorizes the Attorney General to prosecute and

defend causes in any court or tribunal, and to represent and be heard on behalf of the

State when, in her judgment, the public interest of the State requires such action.

11.     The New Mexico Energy, Minerals, and Natural Resources Department is an

executive branch cabinet department in the New Mexico state government, as described

in NMSA 1978, § 9-5A-1, *et seq.*

12.     The New Mexico Department of Game and Fish is a New Mexico state

government agency, as described in NMSA 1978, § 17-1-5.

13.     The New Mexico Environment Department is an executive branch cabinet

department in the New Mexico state government, as described in NMSA 1978, § 9-7A-1

*et seq.*

14.     Katherine Slick is the Director of the Historic Preservation Division of the New

Mexico Cultural Affairs Department.  The Historic Preservation Division is a division of

that executive branch cabinet department of the New Mexico state government, as

described in NMSA 1978, § 9-4A-1.  The Director of the Historic Preservation Division

is designated as the State Historic Preservation Officer ("SHPO") for purposes of the

NHPA.

15.     On March 5, 2004, Governor Richardson submitted to the BLM a review

documenting the numerous inconsistencies between the Proposed Otero Mesa RMPA and

New Mexico State policies, plans, and programs, together with a recommended plan for

the Otero Mesa area.  After Defendant BLM State Director Rundell rejected the

Governor's consistency review and recommendations, Governor Richardson timely

appealed that decision to Defendant BLM Director Kathleen Clarke. On January 21,

2005, Defendant Clarke rejected Governor Richardson's appeal in its entirety.

16.     In February 2004, the New Mexico Department of Energy, Minerals and Natural

Resources; the New Mexico Department of Game and Fish; and the New Mexico

Environment Department all filed protests to the BLM's Proposed Otero Mesa

RMPA/Final EIS. The BLM rejected each of those protests. In June 2004, the Energy,

Minerals and Natural Resources Department and the Department of Game and Fish

submitted written comments to the BLM on the Supplement to the Otero Mesa Proposed

RMPA/Final EIS.

17.     The State of New Mexico, its Governor Bill Richardson, and the State agencies

and officials named as plaintiffs in this action have numerous strong interests in the

Project Area that is the subject of the Otero Mesa RMPA. That entire area is contained

within the State of New Mexico. The Project Area includes nearly all of the New Mexico

portion of the Chihuahuan Desert grassland. The Chihuahuan Desert grassland is one of

the most biologically diverse and endangered arid ecosystems on earth, supporting a

diversity of grasses, yuccas, agaves, and cacti, while providing habitat for the endangered

northern Aplomado falcon, the black-tailed prairie dog, mule deer, pronghorn, and other

sensitive species. The area the Otero Mesa RMPA covers is one of the largest contiguous

grasslands left in the region. Water is an especially vital and vulnerable resource in this

area. Within the area the Otero Mesa RMPA covers are three groundwater basins: the

Tularosa Basin, the Salt Basin and Jornado del Muerto Basin. Much of the groundwater

in these basins is shallow and closely connected to surface water recharge. As a result,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 7

contaminants in surface water are readily delivered into the groundwater and portions of the aquifers are considered highly vulnerable to contamination from surface water discharges.

18.     The State of New Mexico, Governor Bill Richardson, and the agencies and officials named as Plaintiffs herein have jurisdiction over the lands, waters, fish and wildlife, cultural resources, and other resources included in the Project Area.  They have an obligation to protect the State's ground and surface water resources, its environmental and land resources, its air quality, its fish and wildlife, and its cultural and other resources, and to ensure the long-term economic well being of the people of the State. By refusing to adopt the Governor's recommended plan for Otero Mesa and the surrounding area, and instead adopting the Otero Mesa RMPA, the BLM has harmed all of those interests of the State of New Mexico, the Governor, and the agencies and officials who are Plaintiffs in this action.

19.     Defendant BLM is an agency of the United States within the Department of the Interior.  The BLM is the agency responsible for managing the lands that are the subject of the Otero Mesa RMPA in compliance with all federal laws, including FLPMA, NEPA, and the APA.

20.     Defendant Kathleen Clarke is the Director of the BLM.  She signed the January 21, 2005, letter to Governor Bill Richardson denying his appeal of BLM State Director Linda Rundell's decision that rejected the plan that the Governor proposed for the Otero Mesa area and that refused to acknowledge any inconsistency between BLM's Otero Mesa RMPA and New Mexico plans, policies, and programs.  Defendant Clarke also rejected the protests of the Otero Mesa RMPA/Final EIS that the New Mexico Energy,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 8

Minerals and Natural Resources Department; the New Mexico Game and Fish

Department; and the New Mexico Environment Department filed. Defendant Clarke is

sued solely in her official capacity.

21.     Defendant Linda Rundell is the New Mexico State Director of the BLM.

Defendant Rundell signed the January 24, 2005, Record of Decision approving the Otero

Mesa RMPA. Defendant Rundell is sued solely in her official capacity.

## FACTUAL ALLEGATIONS

### The Chihuahuan Desert Ecosystem

22.     The Chihuahuan Desert, in southern New Mexico, west Texas, and northern

Mexico, is one of the three most biologically rich and diverse desert ecoregions in the

world, rivaled only by the Great Sandy Tanmi Desert of Australia and the Namib-Karoo

of southern Africa. Approximately 70% of the Chihuahuan Desert is in Mexico where

there is little long-term protection of the ecosystem. The vast majority of the Chihuahuan

Desert lands in Texas are privately held. In New Mexico, however, the BLM has the

most jurisdiction of any entity over the Chihuahuan Desert portions of the state. Most of

the New Mexican portion of the Chihuahuan Desert is contained within the Project Area

for the Otero Mesa RMPA.

23.     Approximately 3,500 plant species live in the Chihuahuan Desert, and it is

estimated that there are approximately 1,000 (29%) endemic species (species that live

only there and nowhere else). About 30% of the world's 1500 cactus species are found in

the Chihuahuan Desert; it contains the largest assemblage of endangered cacti in the

United States. The Chihuahuan Desert's great diversity of habitats includes arid

grasslands, shrub lands, saline playas, yucca woodland and *crassicaule* (habitats rich in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 9

agaves, yuccas, and cacti), oak-conifer woodlands, spring cienegas, riparian woodlands, gypsum outcrops, sand dunes, and rock escarpments. The United States portion of the Chihuahuan Desert contains approximately 2,263 vascular plant species, over 100 mammal species, over 100 reptile species, 250 bird species, 20 to 25 amphibian species, and 250 butterfly species. In addition, there is a wide variety of endemic fish and mollusks, as well as invertebrates, such as dragonflies. The Chihuahuan Desert is probably the third richest desert for reptiles in the world.

24.     It is estimated that human impacts have converted approximately 50-70% of former Chihuahuan Desert grasslands to desert scrublands during the last 150 years. The BLM estimates that 62% of desert grassland habitats on BLM land in the Project Area has been lost already.

25.     Within the Chihuahuan Desert ecosystem, the Otero Mesa area is particularly significant. It is an unusually intact large grassland area that serves as a critical link in the chain of desert grasslands from central Chihuahua in Mexico up through central New Mexico's Sevilleta National Wildlife Refuge. It contains viable populations of pronghorn antelope, mule deer, and other big game species, and supports prairie dog colonies and predators. It also provides important habitat for sensitive bird species such as the endangered Aplomado Falcon, and other migrating birds. The large fresh water aquifer under the Otero Mesa area is also particularly significant and vulnerable to contamination from surface contaminants and wells.

**The historical resources of the project area**

26.     Besides being rich in ecological resources, the Project Area is also extraordinarily rich in cultural, historic and archaeological resources.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 10

27.     The BLM acknowledges that the Project Area contains tens of thousands of archaeological sites that have yet to be located, inventoried, and studied.  In fact, the BLM states that only about 2% of the Project Area has been surveyed for archaeological resources.

28.     Likewise, various historic trails traverse the Project Area, including routes of exploration and trade dating from *circa* 1539 to the nineteenth century.

29.     Moreover, various Indian tribes claim to have a cultural affinity with the lands within the Project Area.  In response to inquiry letters sent by the BLM to some of the tribes that have a historical and cultural connection with the Project Area, the tribes responded that they have a cultural affinity with the Project Area that continues until this day.  The tribes requested that the BLM consult with them as to how oil and gas development in the Project Area might affect the continuing importance of the Area.

30.     Despite the many important historic and cultural resources found throughout the Project Area, the BLM failed to conduct a Section 106 consultation pursuant to the NHPA to assess how oil and gas development might affect those resources and to determine appropriate mitigation measures to ameliorate those effects.  16 U.S.C. § 470f; 36 C.F.R. Part 800.

## Oil and Gas Development and the Planning Process For the Otero Mesa RMPA

31.     In 1998, exploratory wells located natural gas in the Otero Mesa grassland area in southern New Mexico (within the Project Area), not far from the Texas border.  This gas find resulted in increased interest from the oil and gas industry and a large increase in oil and gas lease nominations to BLM in the vicinity of Otero Mesa.

32.    The increased interest in the Otero Mesa and surrounding areas in Otero and

Sierra Counties from the oil and gas industry prompted the BLM to review its 1986

Resource Management Plan ("RMP") for the area for guidance on fluid mineral leasing

and development.  Finding that the 1986 RMP contained little direction regarding fluid

mineral leasing and development, the BLM decided to prepare an amendment to the 1986

RMP to address oil and gas leasing in Otero and Sierra Counties over the next twenty

years.  Simultaneously, the BLM stopped new leasing in the area pending the outcome of

the planning amendment process.  For leases that had already been issued prior to this

time, the BLM offered the lessees the option of suspending their leases for the duration of

the RMPA/NEPA process.

33.    The Project Area covered in the BLM's planning process includes all of Otero

and Sierra Counties, in southern New Mexico.  Within the 7 million acre Project Area,

BLM administers approximately 1.8 million acres of surface land and 5 million acres of

federal fluid mineral subsurface estate.  See Exhibit 1 attached hereto (map of Project

Area with Otero Mesa RMPA designations).

34.    BLM began the planning and accompanying NEPA process in October 1998.  In

October 2000, the BLM issued its Draft RMPA and EIS for Federal Fluid Minerals

Leasing and Development in Sierra and Otero Counties ("Draft RMPA/DEIS").

35.    The Draft RMPA/DEIS found that the entire Project Area was either "low

potential" or "medium potential" for oil and gas.  No "high potential" locations were

found in the Planning Area.

36.    The Draft RMPA/DEIS analyzed a no action alternative and two other

alternatives.  Alternative A was BLM's Preferred Alternative; Alternative B provided "a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 12

relatively greater emphasis on resource protection by imposing more constraints on fluid minerals leasing and development" than Alternative A.

37.    While Alternative A opened the vast majority of the Project Area up to oil and gas leasing, it also contained a number of protections for grasslands, fragile soils, riparian areas, sensitive wildlife, water sources, cultural resources, and visual resources.  For example, in the Nutt and Otero Mesa grassland habitat areas, leases were to be subject to a "no surface occupancy" ("NSO") stipulation except within 150 meters of existing roads, in order to limit further fragmentation of that critically important habitat. Hundreds of thousands of acres were designated as Big Game or Bighorn Sheep Habitat areas, watershed areas, and other protected areas, and were subject to special lease stipulations to limit disturbance caused by oil and gas operations.  Alternative A also contained a number of protective "best management practices" ("BMP") requirements such as prohibiting surface disturbance within 200 meters of existing wildlife improvements or of the outer edge of the 100-year floodplain; avoiding visual intrusions by locating facilities below hilltops and avoiding hillside "cut and fill"; avoiding populated areas, parks, and scenic areas; imposing erosion minimization measures on activities on slopes greater than 5%; and requirements to prevent surface and groundwater contamination.

38.    A large number of written and oral comments were submitted to BLM on the Draft RMPA/DEIS.  A number of people and organizations commented on the BLM's failure to analyze an alternative more protective than any of the three analyzed in the DEIS that would close the Otero Mesa and Nutt grasslands area entirely to oil and gas leasing.  Generally, those comments went on to state that of the alternatives analyzed in

the DEIS, Alternative B was preferable to Alternative A, which did not provide sufficient environmental and resource protections for the fragile lands and resources in the Project Area.

39.     The U.S. Fish and Wildlife Service commented that the Preferred Alternative did not provide sufficient protections for the endangered Aplomado Falcon, and that more protections were needed in the Otero Mesa and Nutt grassland areas.

40.     The New Mexico Department of Game and Fish expressed concerns about habitat fragmentation and impacts on wildlife, noting that Alternative A's NSO stipulations and other measures provided important protection against such fragmentation.  The Game and Fish Department also noted that more protections were needed for Black-tailed Prairie Dog colonies than were provided in Alternative A.  The New Mexico Environment Department, while expressing greatest support for Alternative B, noted that the BMPs in Alternative A were "imperative" to ensure compliance with water quality standards.  In addition, the Environment Department noted deficiencies in the DEIS's discussion of impacts on air and water quality.  Many other comments addressed a variety of deficiencies in the environmental analysis contained in the Draft EIS.

41.     A number of oil and gas industry representatives commented that the Preferred Alternative (Alternative A), including particularly the NSO stipulation in the Otero Mesa and Nutt grasslands, placed too many constraints on oil and gas development in the Planning Area.

42.     In 2001, a new federal administration took over the BLM and discussions began on developing a different approach to oil and gas leasing in the Otero Mesa area.  By the end of 2002, BLM had developed a new proposal that, according to BLM "differs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 14

significantly from the October 2000 Draft EIS preferred alternative," and from the No
Action alternative and Alternative B that were also analyzed in the Draft EIS.  The
proposal was to replace the NSO stipulation that had been proposed for the Otero Mesa
and Nutt grasslands with a different stipulation that would require oil and gas operators to
limit surface disturbing activities to no more than 5% of the area of a leasehold unit at
any one time.  Right of ways for roads or pipelines needed off of the unit would not be
counted towards the 5% limit.  Nor would lands found to be reclaimed count towards the
5% limit.

43.      In December 2003, BLM released its Proposed RMPA (referred to herein as
"Proposed Otero Mesa RMPA") and Final EIS  for the Project Area.  The Final EIS
presented a brand new alternative containing the 5% disturbance limit for the Otero Mesa
and Nutt grassland areas.  The new alternative, which the BLM labeled "Alternative A
with modifications," contained a number of other significant changes that were not in
either Alternative A or the other alternatives analyzed in the October 2000 Draft EIS.
The new alternative was different from Alternative A (the "Preferred Alternative") in the
following respects, among other things:

-        Nearly doubled the amount of land subject to only standard lease terms
         and conditions rather than special limits or stipulations (increased from
         approximately 779,000 acres to approximately 1.4 million acres);

-        One quarter as much land was subject to NSO (no surface occumpancy)
         stipulation (40,526 acres in Final EIS versus 160,435 acres for Preferred
         Alternative), and NSO stipulation eliminated entirely from Otero Mesa
         and Nutt grassland areas (and replaced by 5% limitation described above);

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 15

- Eliminated stipulations for controlled surface use in nearly 1 million acres in Preferred Alternative (for Watershed Areas, Big Game Habitat Areas, Bighorn Sheep Habitat, and Cuchillo Mountains Pinon Nut Collection Area) (and converted to standard lease terms and conditions);

- Eliminated many protective measures specified as "Best Management Practices," including BMPs prohibiting surface disturbance within 200 meters of existing wildlife improvements or of the outer edge of the 100-year floodplain; avoiding visual intrusions by locating facilities below hilltops and avoiding hillside "cut and fill"; avoiding populated areas, parks, and scenic areas; imposing erosion minimization measures on activities on slopes greater than 5%; specific requirements for noxious weed control; various reclamation requirements, including required reclamation of all disturbed surface areas that are not needed for continued well operations; and requirements to prevent surface and groundwater contamination.

For the most part, these stipulations and requirements were replaced with BLM's bare assurances that it would likely take steps during the leasing or Application for Permit to Drill ("APD") process to address the relevant environmental concerns if it found such steps appropriate at that later time.

44.     Notwithstanding these fundamental differences between the alternatives analyzed in the Draft EIS and the Proposed Otero Mesa RMPA described in the Final EIS, the Final EIS states that the changes therein "are within the scope and analysis of the Draft

RMPA/EIS and do not significantly alter the alternatives or analysis of the environmental consequences."

45.     In February 2004, a number of entities, including plaintiffs New Mexico Energy, Minerals and Natural Resources Department; New Mexico Department of Game and Fish; and New Mexico Environment Department, filed timely protests with the BLM of the Otero Mesa RMPA and Final EIS.  These protests pointed out a number of inadequacies in BLM's NEPA review for the Otero Mesa RMPA, including the need to prepare a supplemental draft EIS on the newly proposed alternative that was not analyzed in the Draft EIS, and numerous other inadequacies in the Draft and Final EISs.

46.     In mid-August 2004, the BLM sent out written rejections of the protests the three New Mexico state agencies had filed.

## Governor Richardson's Consistency Review and Recommended Plan

47.     Under FLPMA, 43 U.S.C. § 1712(c)(9) and 43 C.F.R. § 1610.3-2, the Governor of an affected state has 60 days after issuance of a Proposed RMPA in which to identify inconsistencies with state or local plans, policies, or programs and provide written recommendations to the State BLM Director.  Defendant State BLM Director Linda Rundell forwarded the proposed Otero Mesa RMPA/Final EIS to New Mexico Governor Bill Richardson on January 5, 2004.  On March 5, 2004, Governor Richardson submitted a timely written review of the substantial inconsistencies between the BLM's Proposed Otero Mesa RMPA and various New Mexico state plans, policies, programs, laws, and rules, together with a recommendation to Defendant Rundell.

48.     The inconsistencies described by Governor Richardson included, but were not limited to, inconsistencies with the following:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 17

- State and federal policies and plans for protecting the Chihuahuan Desert ecoregion, including New Mexico Executive Order 2004-005 and the NAFTA-sponsored Chihuahuan Desert Ecoregion Conservation Plan;

- New Mexico State Water Plan (NMSA 1978, Section 72-14-13.1), which calls for measurement and inventory of surface and groundwater sources and uses, and for protection of both the quantity and quality of these resources;

- State policies, laws, and other legislative actions to prevent invasion of exotic species into native vegetation areas, and to remove invasive plant species and replace them with native vegetation;

- New Mexico Wildlife Conservation Act, NMSA 1978, §§ 17-2-37 through 17-2-46, and New Mexico Game Management Plans and Agreements, which together call for protection of state-listed species and other game species, and which give NMDGF authority to manage and protect those species (including pronghorn antelope, bighorn sheep, black-tailed prairie dog, and Aplomado Falcon);

- New Mexico Water Quality Control regulations (adopted pursuant to NMSA 1978, §§ 74-6-1, *et seq.*);

- State and federal laws and regulations for protection of cultural and archaeological resources and sacred sites;

- New Mexico policies and programs supporting alternative energy use and development.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 18

49.     Governor Richardson presented to the BLM an alternative plan that was

consistent with New Mexico's policies, plans, and programs.  The Governor's proposed

plan provided more protections for sensitive areas than were contained in the Alternative

B analyzed in BLM's October 2000 Draft EIS, although it also allowed more unrestricted

oil and gas development in certain areas.  The Governor's plan also proposed that twelve

stipulations be required in certain areas that, under the BLM's original Alternative B,

would have been open to leasing with certain stipulations other than an NSO stipulation.

The Governor's plan was not analyzed in either the October 2000 Draft EIS or the

December 2003 Final EIS.

50.     On May 19, 2005, Defendant Rundell responded to Governor Richardson's

consistency review and recommendations for the Otero Mesa RMPA.  Defendant Rundell

found that Governor Richardson had not presented any inconsistencies between the

Proposed Otero Mesa RMPA and New Mexico's policies, plans, and programs.  Rundell

also refused to adopt any of the twelve stipulations Governor Richardson proposed for

inclusion in the RMPA.

51.     The only change Defendant Rundell approved in the Otero Mesa RMPA was to

extend the time period of protection accorded approximately 35,000 acres of "core

habitat" in the Otero Mesa and Nutt grassland areas.  Whereas the Proposed Otero Mesa

RMPA and Final EIS stated that these areas would be withheld from leasing for five

years, and reevaluated at five-year intervals, Defendant Rundell subsequently decided to

make the no leasing restriction for those areas permanent in the Final Otero Mesa RMPA.

52.     At the same time, Defendant Rundell issued a short "Supplement to Proposed

RMPA and Final EIS" ("Final EIS Supplement") that explained the change in protection

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 19

of core habitat areas and provided an abbreviated list of the changes made in the RMPA between the Draft and Final EIS stages. The BLM allowed a thirty-day period for public comment on the Final EIS Supplement. The BLM did not provide the Governor's plan and recommendations to the public; nor did it provide the public with an opportunity to comment on the Governor's plan and recommendations.

53.     On June 14, 2004, Governor Richardson timely appealed Defendant Rundell's decision on the Governor's consistency review and recommendations to the national Director of the BLM.

54.     On January 21, 2005, Defendant BLM Director Clarke wrote to Governor Richardson, denying that there were any inconsistencies between the Otero Mesa RMPA and New Mexico policies, plans, and programs, and rejecting his appeal. On January 25, 2005, Defendant Clarke's rejection of Governor Richardson's appeal was published in the Federal Register. 70 Fed. Reg. 3550-02.

55.     On January 24, 2005, the BLM issued its Record of Decision approving the Final Otero Mesa Proposed RMPA and Final EIS.

**Federal Land Policy Management Act**

56.     FLPMA requires the BLM to manage public lands "under principles of multiple use and sustained yield, in accordance with the land use plans ['Resource Management Plans,' or 'RMPs']" developed by the BLM. The BLM must "take into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values." 43 U.S.C. § 1702(c). The BLM must

manage resources "without permanent impairment of the productivity of the land and the quality of the environment." Id.

57.     RMPs and RMP amendments must be consistent with state policies, plans, and programs to the maximum extent consistent with federal law. 43 U.S.C. § 1712(c)(9). In addition, FLPMA allows the Governor of the state involved in an RMP amendment to identify inconsistencies between the RMP amendment and state policies, plans, and programs, and to provide the BLM with written recommendations for changes to the RMP amendment. If the Governor's recommendations were not raised during the public review process for the RMP amendment, the BLM must provide the public with an opportunity to comment on the Governor's recommendations. 43 C.F.R. § 1610.3-2(e). If the State Director of the BLM does not accept the Governor's recommendations, the Governor may appeal that decision to the national BLM Director. The BLM Director must accept the Governor's recommendations if he or she determines that they "provide a reasonable balance between the national interest and the State's interest." Id.

58.     RMPs and RMP amendments must "give priority to the designation and protection of areas of critical environmental concern." 43 U.S.C. § 1712(c)(3).

**The National Environmental Policy Act**

59.     NEPA was enacted to ensure that federal projects do not proceed until the environmental effects associated with a project are completely assessed and analyzed by the proponent federal agency. NEPA requires that, before proceeding with a project, a federal agency take a hard look at the environmental consequences of the action.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 21

60.     In cases where the federal project is associated with the possibility of significant environmental harm, then the project cannot proceed until the proponent federal agency first prepares an EIS. 42 U.S.C. § 4332.

61.     NEPA requires federal agencies, including the BLM, to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(E). Agencies must "[r]igorously explore and objectively evaluate all reasonable alternatives," including particularly alternatives "that will avoid or minimize adverse effects" of the proposed action on the environment. 40 C.F.R. §§ 1500.2(e), 1502.14. The alternatives analysis is the "heart" of every NEPA document. Environmental analyses for RMPs and other actions on public lands must, under both NEPA and FLPMA, analyze alternatives that prevent permanent impairment of the quality of the environment and prevent unnecessary and undue degradation of the public lands.

62.     An EIS must analyze and evaluate the direct and indirect environmental impacts of the alternatives, including the proposed action. 40 C.F.R. §§ 1502.16, 1508.7. It must also analyze the cumulative impacts of the project, including the incremental impact of the project when added to other past, present, and reasonably foreseeable future actions. 40 C.F.R. § 1508.7.

63.     An agency must prepare a supplemental EIS if the agency makes substantial changes in the proposed action that are relevant to the environmental concerns, or there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts. 40 C.F.R. § 1502.9(c).

## The National Historic Preservation Act

64.     The National Historic Preservation Act, or NHPA, seeks to protect America's historic heritage by establishing a federal-state partnership to administer such protection and by requiring that federal agencies take into account the impacts of their actions on historic properties. Careful compliance with the statutory and regulatory requirements of the NHPA assures that the loss of historic and cultural sites is kept to a minimum, and that adverse effects to such sites are adequately mitigated.

65.     The salutary effects of the NHPA are achieved through a prescribed "Section 106 consultation" process that involves a dialog between a proponent federal agency – such as the BLM in this case – and Indian tribes, the SHPO, and the public. 16 U.S.C. § 470f. Furthermore, the NHPA requires federal agencies to integrate the protection and preservation of historic and cultural sites into their primary missions, through the development of historic and cultural resource management plans. 16 U.S.C. § 470h-2.

66.     The regulations implementing NHPA stress the importance of considering the effects of a federal project at the earliest possible time. According to the regulations, even "non-destructive project planning activities" are subject to the consultation requirements of the NHPA if those planning activities "restrict the subsequent consideration of alternatives to avoid, minimize or mitigate" the subject project's effects on historical and cultural sites. 36 C.F.R. § 800.1(c).

67.     NHPA Section 106 consultation requires the BLM to make a "reasonable and good faith effort" to identify potentially affected Indian tribes, and to make a "reasonable and good faith effort" to identify historic and cultural resources within the Project Area. The BLM is required to consult with Indian tribes and the New Mexico SHPO as to the

results of its identification efforts and as to how oil and gas development might adversely affect identified historic and cultural resources.

68.     The NHPA also requires that the BLM account for the presence of historic and cultural resources in the Project Area, and to manage those resources in such a manner as to assure that they are preserved. 16 U.S.C. § 470h-2. Additionally, the BLM must develop a program for the "identification, evaluation, and nomination to the National Register" of historic and cultural resources within the Project Area. Id.

## CLAIMS FOR RELIEF

### First Claim For Relief
### (Violation of FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9)) and 43 C.F.R. § 1610.3-2:  BLM's Obligation to Accept Governor's Recommendations)

69.     The allegations contained in the preceding paragraphs are incorporated herein by reference.

70.     BLM Defendants violated FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9)) and 43 C.F.R. § 1610.3-2 by refusing to accept Governor Bill Richardson's recommendations with respect to the Otero Mesa RMPA, even though the Governor's recommendations provided for a reasonable balance between the national interest and the State of New Mexico's interest.  BLM Defendants further violated those provisions of law by determining that there were no inconsistencies between the Final Otero Mesa RMPA and New Mexico policies, plans, and programs, even though the Governor's submissions and other documents in the record clearly demonstrate major inconsistencies.

71.     BLM Defendants' decision to refuse to accept the Governor's recommendations

and to find no inconsistency with New Mexico plans, policies, and programs, is arbitrary

and capricious, and constitutes a violation of the APA and FLPMA.

**Second Claim For Relief**
**(Violation of FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9))**
**and 43 C.F.R. § 1610.3-2:  BLM's Obligation to Provide Governor's Plan**
**to Public For Review and Comment)**

72.     The allegations contained in the preceding paragraphs are incorporated herein by

reference.

73.     BLM Defendants violated FLPMA Section 202(c)(9) (43 U.S.C. § 1712(c)(9))

and 43 C.F.R. § 1610.3-2 by failing to provide Governor Richardson's plan and

recommendations for the Otero Mesa RMPA to the public, and failing to provide the

public with an opportunity to comment on the Governor's plan and recommendations.

74.     BLM Defendants' failure to take these actions to allow public review of Governor

Richardson's plan and recommendations is arbitrary and capricious, and constitutes a

violation of the APA and FLPMA.

**Third Claim For Relief**
**(Violation of FLPMA Section 202(c)(3) (43 U.S.C. § 1712(c)(3):  BLM's Obligation**
**To Give Priority to Designation of ACECs)**

75.     The allegations contained in the preceding paragraphs are incorporated herein by

reference.

76.     FLPMA Section 202(c)(3) (43 U.S.C. § 1712(c)(3)) requires the BLM to "give

priority to the designation and protection of areas of critical environmental concern,"

("ACECs") in the development and revision of land use plans.

77.     In approving the Final Otero Mesa RMPA, BLM Defendants violated this

requirement in failing to designate the Otero Mesa and Nutt grasslands as ACECs, even

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 25

though the evidence was abundant and uncontroverted that these grassland areas qualify as areas of critical environmental concern, and they require protections from oil and gas development in order to retain their unique environmental values. BLM's designation of three small noncontiguous ACECs on mountaintops in those areas does not protect the environmental values of those grassland areas, and does not "give priority to the designation and protection" of the entire expanse of relatively unfragmented grassland areas which are so valuable. To the contrary, BLM's actions promote fragmentation of these grasslands, which will destroy much of their value.

78.     BLM Defendants' decision to adopt the Otero Mesa RMPA without designating the Otero Mesa and Nutt grasslands as ACECs is arbitrary and capricious, and constitutes a violation of the APA and FLPMA.

### Fourth Claim for Relief
### (NEPA: Failure to Prepare Supplemental Draft EIS)

79.     The allegations contained in the preceding paragraphs are incorporated herein by reference.

80.     BLM Defendants violated NEPA and 40 C.F.R. § 1502.9(c) by failing to prepare a Supplemental Draft and Final EIS fully addressing the environmental impacts of the revised Proposed Otero Mesa RMPA because it contained substantial changes to the originally proposed plan analyzed in the October 2000 Draft EIS and because there were significant new circumstances and information bearing on the proposed action and its impacts.

81.     The BLM's abbreviated Final EIS Supplement did not constitute a supplemental Draft or Final EIS. It did not analyze the environmental impacts of the newly proposed alternative (Alternative A – modified), and did not analyze the newly proposed

alternative in the context of a comparable analysis of the environmental impacts of a

reasonable range of other alternatives.  Nor did it meet any of the other requirements

applicable to a draft EIS.  Although it was circulated for public comment, parties were

not permitted to protest the Supplement and the accompanying revised RMPA, although

BLM regulations provide for filing of protests of RMPs and RMP amendments.  43

C.F.R. § 1610.5-2.

82.     BLM Defendants' failure to prepare and circulate for public comment a

Supplemental Draft EIS, and failure to prepare a Supplemental Final EIS on the Proposed

Otero Mesa RMPA is arbitrary and capricious, and constitutes a violation of the APA and

NEPA.

**Fifth Claim for Relief**
**(NEPA:  Failure to Adequately Analyze the Direct, Indirect, and Cumulative
Environmental Impacts of the Otero Mesa RMPA)**

83.     The allegations contained in the preceding paragraphs are incorporated herein by

reference.

84.     BLM Defendants violated NEPA by failing to adequately analyze the

environmental impacts of the Otero Mesa RMPA, including both the Draft (October

2000) and Proposed (December 2003) Otero Mesa RMPA and all alternatives set forth in

the Draft and Final EIS's for the Otero Mesa RMPA, and failing to adequately set forth

the environmental baseline to which impacts from the RMPA must be compared.  The

impacts not properly analyzed include, but are not limited to, the following:

      a)     cumulative impacts of the Otero Mesa RMPA together with other past,

           present, and reasonably foreseeable future actions,

b)      impacts to ground and surface water, including impacts to the Salt

Basin aquifer underlying the Project Area;

c)      impacts to air quality, including impacts other than dust and particulate

impacts;

d)      impacts to cultural resources, including potentially eligible traditional

cultural properties and cultural landscapes, and myriad archeological

resources;

e)      impacts to wildlife and wildlife habitat, including impacts to

threatened and endangered species such as the Aplomado Falcon;

f)      impacts to the sensitive and environmentally significant Chihuahuan

Desert grasslands of Otero Mesa and the Nutt area.

85.     BLM Defendants' failure to take a hard look at the environmental impacts of the

Otero Mesa RMPA is arbitrary and capricious, and constitutes a violation of the APA and

NEPA.

### Sixth Claim for Relief
### (NEPA:  Failure To Analyze a Reasonable Range of Alternatives)

86.     The allegations contained in the preceding paragraphs are incorporated herein by

reference.

87.     BLM Defendants violated NEPA by failing to prepare an EIS for the Otero Mesa

RMPA that analyzed a reasonable range of alternatives to the Draft RMPA and Proposed

RMPA.  Specifically, the EIS failed to analyze an alternative that provided adequate

protections to the sensitive and unique Chihuahuan Desert grasslands of the Otero Mesa

and Nutt areas.  Moreover, the Final EIS added a new alternative (Alternative A –

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 28

modified), which was ultimately adopted, but failed to analyze that alternative's environmental impacts.

88.     In addition, BLM Defendants failed to analyze any alternative that would prevent permanent impairment of the quality of the environment and would prevent unnecessary and undue degradation of the public lands.

89.     BLM Defendants' failure to prepare an EIS for the Otero Mesa RMPA that analyzed a reasonable range of alternatives is arbitrary and capricious, and constitutes a violation of the APA and NEPA.

**Seventh Claim for Relief**<br>**(NHPA:  Violation of 16 U.S.C. §470f — Failure to Commence and to Complete the required Section 106 consultation)**

90.     The allegations contained in the preceding paragraphs are incorporated herein by reference.

91.     The BLM violated the NHPA by failing to commence and complete a Section 106 consultation with affected Indian tribes, the New Mexico SHPO, and the public on the effects of the Otero Mesa RMPA on cultural, historic, and archaeological resources in the Project Area.

**Eighth Claim for Relief**<br>**(NHPA:  Violation of 16 U.S.C. §470h-2 — Failure to Develop a Program for the Identification and Preservation of Historic and Cultural Sites in the Project Area)**

92.     The allegations contained in the preceding paragraphs are incorporated herein by reference.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 29

93.    The BLM violated the NHPA by failing to develop a program to identify historic and cultural resources in the project area, and to manage the resources in the Project Area to assure their preservation and protection.

### Ninth Claim for Relief
### (APA:  Arbitrary and Capricious Action)

94.    The allegations contained in the preceding paragraphs are incorporated herein by reference.

95.    The BLM's decision to approve the Final Otero Mesa RMPA and to reject all of Governor Richardson's recommendations, on the basis of the flawed Final EIS and abbreviated Final EIS Supplement, and without first completing consultation under Section 106 of the NHPA, is arbitrary and capricious, and constitutes a violation of the APA.

96.    In approving the final Otero Mesa RMPA and rejecting all of Governor Richardson's recommendations, on the basis of the flawed final EIS and abbreviated Supplement to the EIS, and without first completing consultation under Section 106 of the NHPA, the BLM failed to examine all relevant data, failed to articulate a rational connection between the facts found and the decision made, and offered an explanation for its decision that runs counter to the evidence before the BLM, all in violation of the APA.


## PRAYER FOR RELIEF

WHEREFORE, the State of New Mexico respectfully requests that the Court:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 30

(1)     Adjudge and declare that BLM Defendants' January 24, 2005, approval of the

        Otero Mesa RMPA and Record of Decision violates FLPMA, NEPA, the

        NHPA, and the APA and is invalid;

(2)     Issue a preliminary and permanent injunction enjoining any action based on

        BLM Defendants' unlawful approval of the Otero Mesa RMPA and Record of

        Decision;

(3)     Order BLM Defendants to provide Governor Richardson's written

        recommendations for the Otero Mesa RMPA to the public and to provide the

        public an opportunity to comment on the Governor's recommendations;

(4)     Order BLM Defendants to accept all of Governor Richardson's

        recommendations for the Otero Mesa RMPA because they provide for a

        reasonable balance between the national interest and the interest of the State

        of New Mexico;

(5)     Order BLM Defendants to prepare legally adequate Supplemental Draft EIS

        and Supplemental Final EIS for the Otero Mesa RMPA;

(6)     Order BLM Defendants to commence and complete an NHPA Section 106

        consultation with affected Indian tribes, the New Mexico SHPO, and the

        public on the effects of the Otero Mesa RMPA on cultural, historic, and

        archaeological resources in the Project Area;

(7)     Order BLM Defendants to develop a program to identify historic and cultural

        resources in the project area, and to manage the resources in the Project Area

        to assure their preservation and protection;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 31

(8)     Enter such temporary, preliminary, or permanent injunctive relief as

specifically prayed for by the State of New Mexico hereinafter; and

(9)     Provide such other and further relief as the Court deems just and proper.

Respectfully submitted this 22nd day of April, 2005.

_____
Alletta Belin
Steven Sugarman
BELIN & SUGARMAN
618 Paseo de Peralta
Santa Fe, New Mexico  87501
Ph:  505-983-8936
Fax:  505-983-0036


PATRICIA A. MADRID, ATTORNEY GENERAL

_____
Stephen R. Farris
Frances C. Bassett
Assistant Attorneys General
P.O. Drawer 1508
Santa Fe, New Mexico  87504-1508
Ph:  505-827-6010
Fax:  505-827-4440

Attorneys for State of New Mexico *ex rel.*
Governor Bill Richardson; Attorney General
Patricia Madrid; New Mexico Energy, Minerals
& Natural Resources Department; New Mexico
Department of Game & Fish; New Mexico
Environment Department; and Katherine Slick

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF -- 32