IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

05 DEC -1 PM 3:42

| | |
|---|---|
| THE STATE OF NEW MEXICO ex rel. GOVERNOR BILL RICHARDSON, et al., Plaintiffs, <br><br> v. <br><br> BUREAU OF LAND MANAGEMENT, et al., Defendants, <br><br> and <br><br> INDEPENDENT PETROLEUM ASSOCIATION OF NEW MEXICO, Intervenor. | No. 05cv00460 BB/RHS and |
| NEW MEXICO WILDERNESS ALLIANCE, et al., Plaintiffs, <br><br> v. <br><br> LINDA RUNDELL, et al., Defendants, <br><br> and <br><br> INDEPENDENT PETROLEUM ASSOCIATION OF NEW MEXICO, Intervenors. | No. 05cv00588 BB/RHS (Consolidated) |

## AMICI CURIAE BRIEF OF THE NEW MEXICO STATE LAND OFFICE



# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SLO MINERAL RESOURCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATUTORY AND REGULATORY FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.  DEVELOPMENT OF NATURAL RESOUCES ACCORDING TO THE RMP IS IN THE BEST INTEREST OF THE STATE OF NEW MEXICO AND THE NEW MEXICO STATE LAND OFFICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. THE RMP REFLECTS A BALANCED MANAGEMENT APPROACH PROPERLY ADHEREING TO REGULATIONS GOVERNING THE BLM THE STATE OF NEW MEXICO, AND THE COMMISSIONER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. THE PLAN IS CONSISTENT WITH STATE AS WELL AS FEDERAL LAW . . . . . . . 8

IV. THE BLM IS THE EXPERIENCED EXPERT IN OIL AND GAS DEVELOPMENT . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

## NEW MEXICO CASES                                                    PAGE NO.

Asplund v. Hannett
31 N.M. 641 (1926) ................................................... 3

Forest Guardians v. Powell
2001-NMCA-028 ..................................................... 3, 7

State ex rel. Otto v. Field
31 N.M. 120 (1925) ................................................... 4

## U.S. CONSTITUTION

Enabling Act
Act of June 20, 1910, 36 Stat. 557, ch. 310 ....................... 3, 4, 6

## STATE CONSTITUTION

New Mexico Constitution, Art. XIII, Sec. 1 ........................... 3

New Mexico Constitution, Art. XIII, Sec. 2 ........................... 4

New Mexico Constitution, Art. XXI, Sec. 9 ............................ 3

## STATUTES

N.M.S.A. 1978 § 19-1-1 ............................................ 4, 7

N.M.S.A. 1978 § 19-1-2 ............................................... 7

N.M.S.A. 1978 § 19-1-17 (1917) ...................................... 1

N.M.S.A. 1978 § 70-2-3 ............................................... 5

## REGULATIONS

43 C.F.R. § 1610.3-2(e) .............................................. 9

## MISCELLANEOUS

State Land Office Rule 100 (19.2.100 NMAC) ........................... 8

Restatement (Second) of Trusts § 364-65 (1959) ....................... 3

## INTRODUCTION

The New Mexico State Land Office ("SLO") files this Amici Curiae brief in support of the Bureau of Land Management's ("BLM") amended Resource Management Plan ("RMP"), the development of the lease sold by the BLM, on July 20, 2005, and the proposed gas pipeline, for an area in south-central New Mexico referred to as Otera Mesa.

The RMP offers the opportunity for developing natural resources through mineral leases in an environmentally responsible manner. Mineral leases are critical to the income of the SLO trust as they comprise 95% of trust revenues which are distributed to various public institutions supported by the trust. NMSA 1978, Section 19-1-17 (1917).

The lease, and the proposed gas pipeline, are essential to gas field development. Although the Governor, the Attorney General, and other Amici, challenge the lease sold under the amended RMP, oil and gas leases have existed on Otera Mesa since 1997. Prior to Commissioner Patrick Lyons taking office, the SLO leased approximately 80,000 acres of land in the area of Otera Mesa for oil and gas development. AR 17134. That acreage includes 800.70 acres leased by the SLO as part of the Bennett Ranch Unit. These leases are within the Bennett Ranch Unit ("BRU"), which is one of the oil and gas properties on Otera Mesa that would be explored and developed pursuant to the RMP. Wells drilled on the BRU in 1997 and 2000 produced significant gas showing.

Public participation has been ongoing throughout the development of the RMP. AR 11406-11484; 11506-11516. The record demonstrates that the BLM met all legal requirements concerning public involvement. The issues were identified, public scoping meetings were held, there was a public review period, public meetings, a protest period, proper review and response by the Director. The Commissioner responded by letter dated June 3, 2004. AR 17134.

The RMP applies proper land use planning which identifies cultural resources and ensures natural resource protection. AR 16134-16628. Information can never be complete during the planning stages. The BLM recognizes "that as the petroleum resource is identified, directional and even horizontal well drilling may become more appropriate and economically feasible." Various steps may develop which will reduce the acreage which will be leased and require reclamation. AR 018175. This organic approach, which responds to development as the needs and challenges are identified, is the approach taken by the SLO Oil Gas and Minerals Division, and the approach which best permits environmentally sensitive development.

## SLO MINERAL RESOURCES

State Trust Lands generated over 300 million dollars this past fiscal year in revenue for beneficiaries of the trust. Royalties earned on oil, gas, and minerals make up 95 percent of revenue deposited in the Land Grant Permanent fund. AR 17134; 021479. The Commissioner is charged with diligently developing revenue to maximize earnings. The Oil, Gas and Minerals Division manages 8,600 oil and gas leases, 100 mineral leases, 1300 communitizations, and more than 360 unitizations to maximize revenue for the trust.

The first trust land lease for oil and gas was issued in 1922. Since then, the SLO has had continuous and vast experience in proper management of oil and gas lease development of oil and gas resources.

## STATUTORY AND REGULATORY FRAMEWORK

Because of its unique statutory and regulatory framework, the impact of a decision to limit exploration, in the manner proposed by the Governor and the Attorney General, impacts the SLO more broadly than the BLM.

The income from State Trust Land is essential to the people of the State of New Mexico. That income was a pre-requisite to statehood. By the Act of June 20, 1910, 36 Stat. 557, ch. 310 (hereinafter the Enabling Act or the Act), Congress set forth the terms by which New Mexico would be admitted as a state. Under the Act, the federal government granted New Mexico certain lands within the State "for the support of common schools." Enabling Act § 6. By the terms of the grant, these lands were to be held by the State in trust. *Id.* § 10, ¶ 1. The Act set forth the conditions by which trust lands could be sold or leased and established limitations on the uses to which income derived from these lands could be put. AR 021481-021482. The Act made it clear that actions taken in contravention of any provision of the Act would constitute a breach of the trust. *Id.* ¶ 2. Forest Guardians v. Powell, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803. The Enabling Act was incorporated into the New Mexico Constitution. The Enabling Act, the New Mexico State Constitution, and case law make it clear that the lands granted under the Act, as well as the profits to be derived from these lands, are to be held in trust for the benefit of named institutions. *See* Enabling Act, § 10, ¶ 1; N.M. Const. art. XIII, § 1; N.M. Const. art. XXI, § 9; Asplund v. Hannet, 31 N.M. 641, 249 P. 1074 (1926).

The Enabling Act established a charitable trust that provides income to support public institutions such as the New Mexico public schools. The intended beneficiary is the community itself. *See* Restatement (Second) of Trusts § 364-65 (1959). New Mexico Courts hold that the intended beneficiary of the federal land grants is the general citizenry of the State, and that the purpose of the grants was to insure a source of funding to support the construction and maintenance of essential social institutions. *See* Enabling Act, § 7 (listing social institutions to be supported by federal land grants).

Upon admission into the Union, the State of New Mexico chose to vest power over its trust lands in a single commissioner whose jurisdiction[7] has been described as "absolute." The Commissioner has broad discretion in determining whether to lease trust land. In State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027, 1040 (1925) the Supreme Court described this as follows: "The commissioner was given almost unlimited power with respect to the public lands owned by the state, 'except as may be otherwise specifically provided by law.' The Court further observed that the Commissioner has, in the management of trust lands, the discretion of a business manager. "This constitutional provision (the Enabling Act, Section 10) must here be interpreted in the light of another, article 13, s 2, which vests the commissioner with the direction, control, care, and disposition of all public lands, under such regulations as may be provided by law."

Because the SLO is mandated by the Enabling Act to generate revenue for the trust, and because the BLM has more land, the limitations argued for by the Governor will impact the SLO more significantly than they will the BLM. For example, the Governor's attempt to limit federal surface occupancy under the RMP, if accepted, would overburden SLO land as oil and gas producers would be forced to turn to the SLO for essential disposal needs. This would result in greater disposal on SLO land. And, the disproportionate use of state trust land would result in focused disturbance by concentrating the location of disposal facilities.

---

[7] "The commissioner of public lands shall . . . have the direction, control, care and disposition of all public lands, under the provisions of the acts of congress relating thereto and such regulation as may be provided by law", N.M. Const. Art. XIII, Sec. 2. "[T]he commissioner of public lands . . . shall have jurisdiction over all lands owned in this chapter by the state, and shall have the management, care, custody, control and disposition thereof in accordance with the provisions of this chapter and the law or laws under which such lands have been or may be acquired." NMSA 1978, § 19-1-1.

In addition, the Governor's plan to limit surface occupancy would likely result in bypassing reserves, resulting in waste of the resources. That waste is specifically prohibited by New Mexico Law. NMSA 1978, 70-2-3 (1988). Developing oil and gas on SLO land according to the RMP is in the best interest of the trust, and it would be a breach of the Commissioner's duty to the trust to fail to pursue every legal avenue to assure that the RMP is adopted.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

In 1986, the first RMP for the lands which are the subject of this litigation was issued by the BLM (the White Sands RMP). In 1998, the BLM decided to amend the White Sands RMP. "The BLM started the planning process in October 1998, by requesting comments to determine the scope of the issues and concerns that needed to be addressed in the RMPA/EIS. The Draft RMPA/EIS was made available for public review and comment in October 2000. The draft RMPA/EIS responded to issues raised in scoping and described and analyzed three alternatives for management of Federal Oil and Gas resources" on the subject lands. AR 018153. "Following 7 months of official public comment there was an additional 30 months of review, analysis and discussion." Id. Due to the twelve years since the issuance of the White Sands RMP, it was necessary under FLPMA to update the plan. Id p. 7. In addition, over this twelve-year period there were significant changes in oil and gas industry practice, as well as a more sophisticated understanding of the relationship between environmental concerns and natural resource development, making it prudent, as well as necessary, to issue an updated plan. AR 018145-018148; 018223. The RMP was issued in December 2003. The Record of Decision ("ROD") approving the amendment to the White Sands Resource Management Plan was issued in January 2005. The BLM issued the first lease following approval of the RMP in July of 2005.

On October 11, 2005 The Governor and the Attorney General ("Complainants") filed a complaint for declaratory and injunctive relief.

## ARGUMENT

I.  DEVELOPMENT OF NATURAL RESOURCES ACCORDING TO THE RMP IS IN THE BEST INTEREST OF THE STATE OF NEW MEXICO AND THE NEW MEXICO STATE LAND OFFICE.  AR 018153.

The RMP reflects a comprehensive and well-documented study of the Otera Mesa area. The RMP is in the best interest of the State of New Mexico and the trust. The State of New Mexico, which will benefit from the reasonable balance of energy supply needs and conservation goals set forth in the RMP. The trust will benefit from increased trust revenues while maintaining natural resources. Any additional delays in the leasing and development process have the potential to deprive state trust beneficiaries of much needed funding. AR 17134.

The Governor's plan is not in the best interest of the trust which must be given paramount consideration under the Enabling Act. Further, the plan is not in the best interest of the State of New Mexico. A development plan, more restrictive than that developed by the BLM, will only discourage the development of oil and gas in this area, and, may make development financially unfeasible. Oil and gas developers have options outside the United States where regulations are less restrictive and labor is less expensive. Moreover, while exploratory wells in this area suggest that oil and gas reserves exist, during the development phase, oil and gas companies must be modest in their investment. While this does not mean oil and gas companies should be exempted from following the law, it does preclude placing unnecessary limitations on development. The RMP has achieved a balance which will permit development while protecting the environment. Although the Governor's plan may attempt to address certain hybrid

environmental concerns, it is not in the best interest of the State of New Mexico because the state needs a plan which reflects broader interests.

II. THE RMP REFLECTS A BALANCED MANAGEMENT APPROACH PROPERLY ADHEREING TO REGULATIONS GOVERNING THE BLM AND THE COMMISSIONER.

The Record of Decision sets forth a summary of the BLM approach to balanced land management.

> The Bureau of Land Management is responsible for the balanced management of the public lands and resources and their various values so that they are considered in a combination that will best serve the needs of the American people. Management is based upon the principles of multiple use and sustained yield, a combination of uses that take into account the long-term needs of future generations for renewable and nonrenewable resources. These resources include recreation, range, timber, minerals, watershed, fish and wildlife, wilderness and natural, scenic, scientific, and cultural values. AR 018152.

This approach is wholly consistent with the approach required of the SLO. NMSA 1978, Section 19-1-1, 19-1-2. The purpose of the trust, being perpetual, is "to insure a source of funding to support the construction and maintenance of essential social institutions." *Forest Guardians v. Powell*, 2001-NMCA-028 ¶ 9. The RMP sets forth criteria that protects grasslands, fragile soils, riparian areas, sensitive wildlife, water sources, cultural sources, and visual resources. The RMP criteria are consistent with SLO environmental policies and contains provisions for reclamation that have historically been determined to be effective by the SLO. The RMP contains provisions for reclamation that are consistent with those the SLO would approve, and has found effective. SLO criteria for determining suitability of trust lands for leasing for oil and gas in frontier areas may include archaeological/paleontological presence, population centers, and threatened and endangered species. The State Land Office has enacted regulations concerning oil and gas activities on trust lands that reflect the needs of the SLO as a

land owner. These regulations address not only the processes for obtaining and maintaining the leases, but also operator responsibilities for operations and reclamation. SLO Rule 100 is the lengthiest, most detailed rule the SLO has. 19.2.100 N.M.A.C. SLO Rules 19.2.100.66 and .67 must be complied with by industry in addition to OCD rules. The final RMP is "within the scope and analysis of the draft RMPA/EIS and do not significantly alter the alternatives or analysis of the environmental consequences."

III.   THE PLAN IS CONSISTENT WITH STATE AND FEDERAL LAW.

The BLM analyzed the Direct, Indirect and Cumulative Environmental Impacts of the RMP. AR 018126-018141. In particular, care for water was a high priority. AR 018140. The "BLM has made the protection of fresh water formations a high priority in the approval process for drilling proposals. At the Application for Permit to Drill stage, a BLM petroleum geologist makes the determination of what fresh water protection measures are required. These determinations are normally based on information shared between BLM and several state agencies, including the State Engineer's Office and Oil Conservation Division. This is handled on a case by case basis, and cementing requirements are based on the geology and acquifer encountered by the proposed well" following an approach consistent with the SLO. AR 018140.

Although the "BLM cannot prohibit the drilling of water wells on on-Federal land; the BLM may stipulate against the use of water derived from local water wells. For example, the BLM could require that water used for lease development purposes must come from sources outside Otero Mesa. Onshore Order No. 1 requires that the source of water be identified. The intent of the onshore order is that the BLM will judge whether the water source is environmentally acceptable, and if it is not, BLM would require another source."

8

The Law Does Not Require the BLM to Accept the Governor's Recommendations unless it finds "they provide for a reasonable balance between the National interest and the State's interest." 43 C.F.R. § 1610.3-2(e). In this case, the BLM, after a careful evaluation, did not find that the Governor's plan, in its entirety, provided a reasonable balance.  AR 018126-018141. Rather, the final RMP accepted the Governor's request for additional Aplomado Falcon "core habitat" protection and makes no leasing requirements permanent for 35,000 acres of core habitat for Aplomado Falcons. This represented a change from the proposed RMP which permitted reevaluation of core habitat after 5 years.

IV. THE BLM AND THE COMMISSIONER ARE THE EXPERIENCED EXPERTS IN OIL AND GAS DEVELOPMENT.

The BLM and SLO have vast experience in managing oil and gas leases throughout the state and both endorse the BLM plan. While the AG and the Governor have offered an alternative plan, it is narrow in focus, and fails to consider the broad issues addressed and resolved in the BLM plan.

Moreover, by law the BLM and OCD must work together as leases are issued and the RMP is implemented. For example, "[t]he BLM recognizes that the State of New Mexico has a critical role in the permitting of injection wells." Although BLM has approval authority for the disposal of water, the OCD has jurisdiction over the use of injection wells for that disposal. Due to this shared responsibility, BLM always coordinates the Conditions of Approval with the appropriate State of New Mexico agencies. This is dealt with at the proposal stage, at the point a company requests such means of disposal." AR 018139.

## CONCLUSION

The RMP represents a thoughtful effort on the part of the BLM to maintain a high sensitivity to environmental concerns while addressing the needs of the oil and gas industry. The

9

RMP does not compromise environmental standards: it merely incorporates into those standards the reality of production. The RMP is in the best interest of the State of New Mexico, and oil and gas leases should be issued and development allowed to proceed under its requirements. proceed under the RMP.

Respectfully Submitted,

*Katherine M. Moss*
Katherine M. Moss, Esquire
Associate Counsel
New Mexico State Land Office
P.O. Box 1148
Santa Fe, NM 87504-1148
505-827-5713

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the above pleading to be sent to all counsel of record, as appear below, by United States mail, first class, postage pre-paid on this 1st day of December, 2005.

*Katherine M. Moss*
Katherine M. Moss, Esquire
Associate Counsel, New Mexico State Land Office

Patricia A. Madrid, Attorney General
Stephen R. Farris, Asst. Attorney General
Frances C. Bassett, Asst. Attorney General
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Ph.: 505-827-6010
Fax: 505-827-4440

Alletta Belin, Esq.
Steven Sugarman, Esq.
Belin & Sugarman
618 Paseo de Peralta
Santa Fe, NM 87501
Ph.: 505-983-8936
Fax: 505-9830036
Counsel for the State of New Mexico

Andrew A. Smith
U.S. Department of Justice
Environment & Natural Resources Division

McCrystie Adams, Esq.
James S. Angell, Esq.
Mike R. Harris, Esq.
Earthjustice Legal Defense Fund, Inc.
1400 Glenarm Place #300
Denver, CO 8022
Ph: 303-623-9466

David L. Plotsky, Esq.
122 Girard Avenue, SE
Albuquerque, NM 87106
Phone: 505-268-0095
Fax: 505-266-9585
Counsel for Wilderness Alliance, et al.

Alison Roberts, Esq.
William Perry Pendley, Esq.
Mountain State Legal Foundation

10

c/o U. S. Attorney's Office
P.O. Box 607
Albuquerque, NM 87103
Ph.: 505-224-1468
Fax: 505-3467205
Counsel for the United States

2596 South Lewis Way
Lakewood, CO 80202
Ph.: 303-292-2021

Jason Bowles, Esq
Bowles and Crow
600 Central SW, Ste. 111
Albuquerque, NM 87102
Ph.: 505-217-2680

Counsel for IPANM