# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

---

**THE STATE OF NEW MEXICO ex rel.
GOVERNOR BILL RICHARDSON, et al.**,

        Plaintiffs,

v.                                                                                          No. CIV 05-0460 BB/RHS

**BUREAU OF LAND MANAGEMENT, et al.**,

        Federal Defendants,

and

**INDEPENDENT PETROLEUM ASS'N
OF NEW MEXICO**,

        Defendant-Intervenor.                                    and

**NEW MEXICO WILDERNESS ALLIANCE, et al.**,

        Plaintiffs,

v.                                                                                          No. CIV 05-0588 BB/RHS
                                                                                                         (consolidated)

**LINDA RUNDELL, et al.**

        Federal Defendants.

## MEMORANDUM OPINION

      This matter is before the Court for consideration of a motion to amend or clarify the Court's judgment, filed by the State of New Mexico (Doc. 128), as well as a motion to clarify the

judgment, filed by the Wilderness Alliance (Doc. 129).  Having considered the submissions of the parties and the applicable law, the Court will deny both motions.

The Court must first address its authority to decide Plaintiffs' motions, given the fact that various parties have filed notices of appeal in this case.  Ordinarily, the filing of a notice of appeal divests the district court of jurisdiction, rendering any subsequent action by the court null and void.  *Burke v. Utah Transit Authority and Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006).  However, Plaintiffs' motions in this case have been filed under Rule 59 of the Federal Rules of Civil Procedure; where such a motion has been filed, the appellate court is the one divested of jurisdiction until the district court has decided the Rule 59 motion.  *Stone v. INS*, 514 U.S. 386, 402-03 (1995).  The Court must therefore determine whether the Federal Defendants ("BLM") are correct in arguing that Rule 59 has no applicability to this case.

BLM's argument is based on the fact that this matter is an administrative appeal rather than an ordinary civil action.  BLM points to *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994), in which the Tenth Circuit stated that a trial court addressing an administrative appeal must govern itself according to the rules of appellate procedure and process the case as an appeal.  BLM's argument reads this language much too broadly.  The *Olenhouse* opinion was directed solely at the fact that the district court had allowed additional evidence to be presented in that case, outside the confines of the administrative record.  *Olenhouse* specifically disapproved of such an action in an administrative appeal, and its statement that the district court must apply the rules of appellate procedure should be limited to that context.  Nor would it serve any logical or practical purpose to dispense with all of the rules of civil procedure in every case involving an administrative appeal, and to require the district courts to exclusively follow the rules

2

of appellate procedure instead.  The Court therefore holds that Plaintiffs' motions were properly filed under Rule 59, and that this Court has the authority to decide those motions.

**Merits of Motions**

The State has raised four main issues in its motion, two of which are also the subject of the Wilderness Plaintiffs' motion.  First, the State contends the Court should order BLM to prepare an Environmental Impact Statement ("EIS") rather than an Environmental Assessment ("EA") before deciding whether to issue the Bennett Ranch Unit ("BRU") lease.  Second,  the State and the Wilderness Plaintiffs maintain the Court should order BLM to allow an opportunity for public comment before issuing the BRU lease, whether an EA or an EIS is prepared. Third, the State argues the Court erred in failing to require BLM to prepare an analysis of cumulative impacts caused by the approval of a gas pipeline as well as oil and gas leasing in the area of the BRU lease.   Finally, the State and the Wilderness Plaintiffs ask the Court to retain jurisdiction over this case and require BLM to return to the Court for permission before taking any action to issue the BRU lease.

**EIS or EA:**  The State's request that the Court order BLM to prepare an EIS is essentially an effort to have the Court decide beforehand which type of environmental analysis is necessary, without giving BLM an opportunity to address that issue in the first instance.  Such action by the Court would be inappropriate and would violate the requirement that an administrative decision be ripe for adjudication before a court involves itself in the matter.  *See, e.g., Wyoming Outdoor Council v. U.S. Forest Service,* 165 F.3d 43, 50 (D.C. Cir. 1999).  Such premature review denies an agency the opportunity to apply its expertise, and impermissibly allows judicial interference in an administrative decision before a final agency decision has been

made. *See id.* BLM will therefore be allowed to follow the normal NEPA process with respect to the BRU lease, without interference by this Court, in the decision as to whether an EA or an EIS is the appropriate vehicle for an adequate analysis of the environmental impacts of issuing the BRU lease. *See Airport Neighbors Alliance, Inc. v. United States*, 90 F.3d 426, 429 (10th Cir. 1996) (initial determination regarding need for EIS lies with agency).

**Mandatory Opportunity for Public Comment:** The State and the Wilderness Plaintiffs contend that BLM should be required to allow an opportunity for public comment before deciding whether to issue the BRU lease, whether an EA or an EIS is prepared.[1] They point out that this Court, in its prior opinion, stated that public comment would be more meaningful at the leasing stage rather than the more general regional planning stage. In making that statement, the Court did not intend to imply in any way that an opportunity for public comment is mandatory before the BRU lease is issued. Again, that is for BLM to decide initially, with judicial review of that decision, if any, available through the normal channels. The issue of whether public comment should be required prior to leasing the BRU parcel is thus not ripe for judicial review at this point. The Court therefore declines to take the extraordinary step of ordering BLM, even if it decides an EA is appropriate rather than an EIS, to allow an opportunity for public comment prior to issuing the BRU lease.[2]

---

[1]As all parties agree, if an EIS is prepared an opportunity for public comment is mandatory, while if an EA is prepared no such opportunity need be given.

[2]Of course, BLM remains free to come to the conclusion that, given the intense public interest in this leasing decision, such an opportunity for public comment might be appropriate regardless of the type of NEPA document BLM decides is needed prior to issuing the lease. *Cf. Northwest Envt'l Defense Center v. Bonneville Power Admin.*, 117 F.3d 1520, 1536 (9th Cir. 1997) (existence of public controversy is factor to be considered in deciding whether to prepare EIS).

**Failure to Analyze Cumulative Impacts Prior to Approving Pipeline:** The State points out that the Court's prior opinion did not specifically address its argument that the cumulative impacts of oil and gas leasing in the BRU area should have been addressed before the gas pipeline was approved. The State is correct; the Court understood the State's argument to be an additional challenge to BLM's failure to perform any specific NEPA analysis prior to holding the BRU lease sale, rather than a separate NEPA challenge to the pipeline decision itself. This understanding was bolstered by the fact that no documents addressing the pipeline were included in the paper copies of the "significant" portions of the administrative record that were submitted to the Court for review; instead, the EA and the few other documents concerned with the pipeline approval appear only on the portions of the record that are ostensibly available for review on the CDs provided to the Court.[3] In fact, upon re-reading the State's opening brief, it still appears to the Court that the State was simply arguing that BLM had to perform a specific analysis of the BRU lease's environmental impacts, including the alleged cumulative impacts caused by the lease and the pipeline, to comply with NEPA.

In any event, the Court now holds that it would have been premature for BLM to attempt to analyze the cumulative impacts, if any, of the pipeline and the BRU lease (as well as any other activity in the area that is subject to NEPA) before it became certain the BRU lease sale would be held. The scant information provided to the Court, concerning the pipeline and the "gas flaring"

---

[3]The parties should be aware that the material on the CDs is cumbersome and difficult to access, and in fact the Court has been unable to access at least a portion of one of the CDs, which failed to open. This portion apparently includes the EA for the pipeline, as well as other documents such as a "Categorical Exclusion." [State's opening case brief, p. 55] Therefore, if any future proceedings are held before the Court, the Court will require paper copies of the parts of the record upon which the parties wish to rely.

at two existing wells located off the BRU lease parcel,[4] indicate the main environmental impacts expected in the area will be the result of the BRU lease and subsequent exploration and development of that lease. The appropriate time to perform a cumulative-impacts analysis, therefore, should such an analysis be required at all,[5] is at the appropriate time for analyzing the environmental impacts of the BRU lease itself; any earlier analysis would necessarily have been purely speculative, given the nature of conditions at that time. As the Court has held, that appropriate time to analyze the BRU lease's impacts is now, at the leasing stage. In sum, even if a cumulative-impacts analysis is necessary to address the environmental impacts of various BLM actions in the BRU lease area, BLM now has an opportunity to decide whether such an analysis is necessary and, if so, to perform it at the appropriate time in the NEPA process. BLM's failure to perform such an analysis earlier, at the pipeline-approval stage, did not violate NEPA. *See, e.g., Park County Resource Council, Inc. v. United States Dep't of Agric.*, 817 F.2d 609, 623 (10th Cir.1987) (requiring analysis of cumulative impacts at time when future development of lease was speculative would "result in a gross misallocation of resources...").

**Retention of Jurisdiction:** The State and the Wilderness Plaintiffs ask the Court to retain jurisdiction over this case and require BLM to return to court to obtain approval before proceeding with any lease of the BRU parcel. In other words, they ask the Court to take the extraordinary step of circumventing the regular NEPA process to impose a type of prior restraint

---

[4]In fact, the Court is aware of no information in the record concerning the gas flaring mentioned by the State; this matter seems to have appeared suddenly, without citation to any portion of the administrative record, out of the proverbial left field. [State's opening brief p. 59]

[5]The Court in no way intends to prematurely suggest or imply that the facts of this case would require such an analysis.

on BLM's ability to issue the lease.  Put another way, they request that the Court issue a form of preliminary injunction even before BLM has made any decision as to what type of environmental analysis to perform, let alone had an opportunity to actually perform the analysis.  As noted above, the usual NEPA process requires an agency to decide whether to prepare an EA or an EIS, allows the agency to act on its decision, and then subjects that decision to possible judicial review by interested parties.  The Court sees no need to depart from that usual procedure in this case.  While it is true that Plaintiffs and many members of the public disagree vehemently with the decisions BLM has made concerning Otero Mesa, it cannot fairly be said that BLM has attempted to circumvent any part of the NEPA process.  In fact, BLM agreed not to issue the BRU lease while this case was pending, which obviated the need for Plaintiffs to seek a preliminary injunction against issuance of the lease.  The Court therefore will not preclude BLM from following the normal NEPA procedures with respect to the BRU lease.

**Conclusion**

Based on the foregoing discussion, Plaintiffs' Rule 59 motions (Docs. 128, 129) will be denied.

Dated this 11th day of January, 2007.

_____
BRUCE D. BLACK
United States District Judge