IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**STATE OF NEW MEXICO ex rel. GOVERNOR BILL RICHARDSON, et al.,**

   **Plaintiffs,**

v.                 No. CIV 05-460 BB/RHS

**BUREAU OF LAND MANAGEMENT, et al.,**

   **Defendants,**

and

**I N D E P E N D E N T P E T R O L E U M ASSOCIATION OF NEW MEXICO, a non-profit corporation,**

   **Applicant for Intervention.**

                 **Consolidated with:**

**NEW MEXICO WILDERNESS ALLIANCE, et al.,**

   **Plaintiffs,**

v.                 No. CIV 05-588 BB/RHS

**LINDA RUNDELL, et al.,**

   **Defendants.**

**MEMORANDUM OPINION
IN SUPPORT OF ATTORNEYS' FEES**

   **THIS MATTER** is before the Court on the *Application for Attorney's Fees of Plaintiffs New Mexico Wilderness Alliance, et al.* (Doc. 163). The Court having given

due consideration to all submissions by counsel, finds the motion is supported by law and attorney's fees should be awarded.

*Procedural History*

On April 22, 2005, the State of New Mexico through its Governor, Attorney General, and several of its agencies,[1] filed suit against the United States Bureau of Land Management ["BLM" or "Federal Defendants" or "BLM Defendants"] seeking declaratory and injunctive relief to enjoin and overturn the Resource Management Plan Amendment ["RMPA"] on a large plain of desert grassland covering two counties. A month later, a very similar suit[2] was filed by the New Mexico Wilderness Alliance, the Wilderness Society, Sierra Club, Natural Resources Defense Council, National Wildlife Federation, Southwest Environmental Center, Forest Guardians, and the New Mexico Wildlife Federation [collectively "NMWA" or "the Alliance"]. The cases were consolidated in July of 2005 as the Court found they were "nearly identical." The Alliance case was basically a challenge to BLM's decision to adopt the RMPA authorizing oil and gas development on approximately 1.8 million acres of public lands, which encompassed the ecologically diverse Otero Mesa. Both the State and the Alliance' suits alleged that BLM's adoption of the RMPA – along with a subsequent oil

---

[1] The State actually hired two prominent, private practitioners, active in environmental causes, to represent its interest.

[2] This claim was somewhat more detailed and added an Endangered Species Act claim.

lease sale – violated the National Environmental Policy Act ["NEPA"] and several other statutes.

On September 27, 2006, this Court found that BLM's plan-level analysis complied with NEPA, but that the agency erred in failing to perform a site-specific environmental impact analysis prior to issuing an oil lease in the Bennett Ranch area of Otero Mesa. The Alliance and the State appealed this Court's decision to the Tenth Circuit. BLM did not pursue an appeal of this Court's adverse ruling on the failure to follow NEPA compliance, but a defendant-intervenor, the Independent Petroleum Association of New Mexico, did appeal that issue.

The Tenth Circuit found in favor of the Alliance in holding: (1) the Final Environmental Impact Statement ["FEIS"] for the RMPA adopted by BLM was inadequate because it failed to analyze the habitat fragmentation that would result from BLM's chosen alternative; and (2) the FEIS advanced by BLM failed to consider a proper range of alternatives, including the no-development alternative; (3) BLM had not adequately explained why impacts on the Salt Basin aquifer would be "minimal," and (4) BLM was required to prepare a site-specific NEPA analysis before the oil and gas lease was issued.[3]  *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 688, 706-07, 711 (10th Cir. 2009). The Tenth Circuit rejected Plaintiffs' claim that BLM was required to analyze an alternative designating "wilderness study areas,"

---

[3]  The Court of Appeals found that the Fish and Wildlife Service's decision to reintroduce the Northern Aplomado Falcon into the plan area mooted NMWA's Endangered Species Act claim.

and rejected the State's claim that BLM was required to circulate the Governor's Otero Mesa plan for public comment. The Tenth Circuit also denied BLM's motion for rehearing.

### *Standard of Review*

Under the American rule governing attorney's fees, courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). The Equal Access to Justice Act ["EAJA"], 28 U.S.C. § 2412, is a "limited exception" to that rule, allowing a prevailing party to recover reasonable attorney's fees and costs in any civil action brought by or against the United States. 28 U.S.C. § 2412(b); *Forest Conservation Council v. Devlin*, 994 F.2d 709, 712-13 (9th Cir. 1993) (citing *Pierce v. Underwood*, 487 U.S. 552, 575 (1988)). EAJA provides that "a court shall award to a prevailing party ... fees and other expenses, in addition to any costs ... incurred by that party in any civil action ... including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A prevailing party is one who could obtain a court order to enforce any portion of its merits. *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989); *Biodiversity Conservation Alliance v. Stem*, 519 F.3d 1226, 1230 (10th Cir. 2008).

### *Prevailing Party*

The Alliance was clearly a prevailing party. It was successful in requiring the BLM to: (1) prepare a supplemental EIS to analyze fragmentation effects; (2) defend its conclusion the impact on the Salt Basin would be minimal; (3) evaluate the no-development option prior to proceeding; and (if the other requirements are met) (4) prepare a site-specific NEPA analysis prior to issuing any oil and gas leases. Each of these claims can be or has been enforced by court order.

The Federal Defendants therefore concede Plaintiffs are "prevailing parties." BLM Resp. at 4. Although several of their arguments undercut that concession, they are couched as challenges as to whether the fees are "substantially justified." The Court will therefore address them in that context.

### *Substantially Justified*

The Federal Defendants argue that although Plaintiffs prevailed on these matters on appeal, they cannot "focus solely on the decision of the Tenth Circuit in reaching the merits of the claims of this case." BLM's Resp. at 6. They rely on general dicta from cases from the Fifth and D.C. Circuits to support this conclusion. However, both logic and precedent dictate the appellate opinion reversing a lower court decision must be the fountain from which analysis proceeds and the prior district court ruling should not be overweighted.[4]

---

<sup>4</sup> *U.S.S.E.C. v. Zahareas*, 374 F.3d 624, 627-28 (8th Cir. 2004); *Golembiewski v. Barnhart*, 382 F.3d 721, 725 (7th Cir. 2004); *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996); *cf. Estate of Smith v. O'Halloran*, 930 F.3d 1496, 1502 (10th Cir. 1991) (fact that district court upheld agency position does not establish it was substantially justified).

**Indeed, BLM would have this Court largely ignore the Tenth Circuit's opinion and language. Instead, BLM suggests that the parties must re-brief the merits so this Court can determine de novo whether BLM's actions and arguments were substantially justified.** *See* **BLM Resp. at 4-7. The Supreme Court has cautioned against this approach, warning that "[a] request for attorney's fees should not result in a second major litigation,"** *Hensley v. Eckerhart*, **461 U.S. 424, 437 (1983), and Congress expressly amended 28 U.S.C. § 2142(d)(1)(B) to ensure the determination of substantial justification will not require additional discovery or evidence.** *United States v. Certain Real Estate Prop. Located at 4880 S.E. Dixie Highway*, **838 F.2d 1558, 1564-65 (11th Cir. 1988); 8 FEDERAL PROCEDURE 20:509 (2011). Moreover, this Court is sufficiently familiar with the record in this case to determine appropriate legal fees.** *Portland Audubon Soc. v. Lujan*, **865 F. Supp. 1461, 1477 (D. Ore. 1994).**

**The initial issue to be resolved is whether the United States can demonstrate its positions were substantially justified.** *Gutierrez v. Sullivan*, **953 F.2d 579, 584 (10th Cir. 1992). In order to satisfy this burden, both the Government's prelitigation actions and its arguments during the course of the litigation must be reasonable.** *Al-Maleki v. Holder*, **558 F.3d 1200, 1207 (10th Cir. 2009). The fact that the Government's litigating position was "substantially justified" does not necessarily effect prelitigation conduct that was without reasonable bases.** *Hackett v. Barnhart*, **475 F.3d 1166, 1174 (10th Cir. 2007).**

**As early as the second paragraph of the Tenth Circuit opinion, Judge Lucero, speaking for the Court, noted they discerned "serious flaws in BLM's procedures." 565 F.3d at 688. The Court then characterized the draft EIS for potential drilling as "cursory." 565 F.3d at 691. This is significant because the BLM later relied on the draft EIS in defending the modified plan it eventually adopted. 565 F.3d 706. The Tenth Circuit found that, "By arguing that a difference in the degree of habitat fragmentation did not require a fresh impacts analysis, BLM neglects the *fundamental nature* of the environmental problem at issue." *Id*. (emphasis added).[5] The Court of Appeals noted "adoption of the BLM argument would allow it to 'remain oblivious to differing environmental impacts, or hide these from the public simply because it understands the general type of impact likely to occur.'" *Id*. It concluded "[s]uch a state of affairs would be anathema to NEPA's 'twin arms' of informed decision making and public access to information. ... Alternative A-modified was qualitatively different and well outside the spectrum of anything BLM considered in the draft EIS, and BLM was required to issue a supplement analyzing the impact of that alternative." *Id*. The Court also pointed out that "the selection of Alternative A-modified was not a minor change or oversight." 565 F.3d at 708.[6]**

---

[5] This Court also recognized this was a "very different approach, which does not restrict oil and gas activity to areas that are adjacent to already-disturbed roads." *New Mexico ex rel. Richardson v. BLM*, 459 F. Supp. 2d 1102, 1111 (D.N.M. 2006).

[6] The Circuit Court also accepted that the State of New Mexico's argument that the BLM had acted arbitrarily in concluding a full analysis of the aquifer was not necessary as the impacts would be minimal. 565 F.3d at 715. Since only the question of appropriate attorney's fees for the Alliance is at issue. however, this Court will not evaluate this facet of the Tenth Circuit holding.

The Tenth Circuit also took BLM to task for not considering the "no development option." The Court of Appeals noted:

> Applying the rule of reason, we agree with NMWA that analysis of an alternative closing the Mesa to development is compelled by 40 C.F.R. § 1502.14. Excluding such an alternative prevented BLM from taking a hard look at all reasonable options before it. ... Given the powerful countervailing environmental values, we cannot say that it would be "impractical" or "ineffective" under multiple-use principles to close the Mesa to development. Accordingly, the option of closing the Mesa is a reasonable management possibility. BLM was required to include such an alternative in its NEPA analysis, and the failure to do so was arbitrary and capricious.

565 F.3d at 711. The Court therefore concluded BLM had failed its "duty" to consider all alternatives. *Id*. In light of the Tenth Circuit's conclusion that BLM's position fundamentally misconstrued the law, that position cannot have been "substantially justified" for EAJA purposes. *See, e.g., Gatson v. Bowen*, 854 F.2d 379, 380-81 (10th Cir. 1988); *N.L.R.B. v. Pueblo of San Juan*, 305 F. Supp. 2d 1229, 1233-34 (D.N.M. 2003) (same).

Rather that defend its original multiple use argument, BLM's fee brief offers an entirely new rationale BLM now maintains that its failure to consider protective alternatives was reasonably based on agency policy guidance that purportedly required it to leave the Mesa open to oil and gas development if the agency thought the area could be reasonably protected. BLM Resp. at 7-8. BLM never presented this theory in the record of decision, its briefing before this Court, or as best can be determined from this vantage point, before the Tenth Circuit. An agency action "must be upheld,

8

if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Therefore, BLM cannot now have a second bite at the apple by creating an entirely new rationale. *See New Mexico*, 565 F.3d at 704 (judicial review of agency action "exclud[es] post-hoc rationalization concocted by counsel in briefs or argument"). Furthermore, the question for a fee petition is whether the agency's earlier action and legal arguments <u>were substantially justified</u>, not whether its position <u>can be</u> justified. *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 58-59 (2d Cir. 1995). BLM cites the agency's internal Minerals Manual for its new rationale that "[i]t is also Bureau policy to keep public lands open to mineral exploration and development, unless closure or restriction is mandated by Congress or justified in the national interest." BLM Resp. at 8 n. 3. Again, BLM never previously advanced this provision and, moreover, such general agency guidance is not legally binding. *See Christenson v. Harris County*, 529 U.S. 576, 587-87 (2000) (agency policy statements, manuals, and guidelines lack the force of law).

The Tenth Circuit also determined that environmental impacts were "reasonably foreseeable" at the leasing stage and BLM erred in permitting postponement of the consideration of such impacts. 565 F.3d at 780. An administrative decision that is not reasonable in fact is not "substantially justified." *Gutierrez v. Sullivan*, 953 F.2d 579, 586 (10th Cir. 1992). "Thus, NEPA required an analysis of site-specific impacts of the July 20 lease prior to its issuance and BLM acted arbitrarily and capriciously by failing to conduct one." 565 F.3d at 718-19.

**While a determination that the agency's action was arbitrary and capricious does not universally establish that the agency's position was not justified for EAJA purposes, *see Hadden v. Bowen*, 851 F.2d 1266, 1268-69 (10th Cir. 1988), the Tenth Circuit has indicated that a finding that the Government's action was "arbitrary and capricious" strongly suggests that its position was not "substantially justified." *See Estate of Smith v. O'Halloran*, 930 F.2d at 1501-02; *see also Federal Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir. 1993) (Where "the legal standards which governed the merits phase of this litigation are precisely those to be applied to the EAJA question" of substantial justification, "the earlier panel's careful analysis of the government's position allows no further consideration of this issue."); *Olenhouse v. Commodity Credit Corp.*, 922 F. Supp. 489, 494 (D. Kan. 1996) (Tenth Circuit's finding that the agency's action was arbitrary and capricious necessarily meant it had no reasonable basis in law or fact and therefore was not substantially justified). Moreover, the Circuit use of strong language in repudiating BLM's decisions indicates a lack of substantial justification. *Golembiewski v. Barnhart*, 382 F.3d at 724-25.**

### *Amount of Fee*

**BLM now argues that "the Tenth Circuit significantly overstated the amount of development that could occur under the RMPA." BLM's Resp. at 9. They further cite the administrative record and conclude that "[a]lthough BLM may not have mustered sufficient evidentiary support to satisfy the Tenth Circuit, the explanation was logical and the evidentiary issue is easily cured on remand." *Ibid*. at 10. Finally, Defendants**

10

again note this Court's opinion did not go as far as the Circuit's. *Ibid.* Initially, this Court must note the obvious ; it is bound by the opinions of the Tenth Circuit. *Neal v. United States*, 516 U.S. 284, 295 (1996); *Estate of Smith*, 930 F.2d at 1502. Secondly, it is the Circuit's opinion that predominates in determining substantial justification. *U.S.S.E.C. v. Zahareas*, 374 F.3d at 627-28; *Thomas v. Peterson*, 841 F.2d at 336.

In the present case, following the Tenth Circuit decision, the Plaintiffs achieved a very substantial portion of what they sought in their complaint. *Cf. Wyoming Wildlife Fed'n v. United States*, 792 F.2d 981, 984 (10th Cir. 1986) (Court may evaluate relief granted against relief sought). In their First Cause of Action, NMWA alleged BLM failed to carefully analyze how hydrocarbon development would fragment, destroy or degrade the Otero Mesa and Nutt desert grassland complexes "and contaminate the aquifer underlying the plan area." (Pls. Compl. ¶ 118). The Circuit Court agreed. 565 F.3d at 705-08, 715. In their Second Cause of Action, NMWA alleged that BLM had failed to "analyze the Full Range of Reasonable Alternatives." Once again, the Circuit agreed noting the "no-development" option was clearly reasonable "and the failure to do so was arbitrary and capricious." 565 F.3d at 711. Plaintiffs' Third Cause of Action alleges that "BLM violated NEPA by failing to prepare a supplemental or revised EIS to examine the potential environmental impacts associated with the substantial changes made to Alternative A." (Pls. Compl. ¶ 129). Once again, the Tenth Circuit agreed. 565 F.3d at 705-07, 713-15.

### *Special Circumstances*

The BLM Defendants argue that this Court should deny the Alliance fees because under EAJA there are "special circumstances" that make an award unjust." BLM Resp. at 12. They argue that the NMWA got a "free ride" from the State of New Mexico. The Court rejects this argument. This Court agrees that if a party ineligible for fees is fully willing and able to prosecute the action against the United States, parties eligible for fees should not be able to take a "free ride" through the judicial process at Government expense. *State of Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir. 1988). But the Government Defendants bear the burden of proving NMWA is thus ineligible under the EAJA. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). So the trial court must undertake an examination of the role of the fee-ineligible party to determine its role in the litigation. *Guste*, 853 F.2d at 1225; *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 393-94 (2d Cir. 1985). Based on the current record,[7] the Court finds NMWA is entitled to attorney's fees and is not a "free rider."

The Alliance was an active participant from the very inception of the BLM process. The NMWA groups participated fully in every step of the RMPA process commenting on the Draft EIS, commenting on the Final EIS, and filing an administrative appeal and challenging BLM's adoption of the RMPA. Once its efforts to secure a full NEPA analysis and more protective RMPA failed, NMWA participated

---

[7] As noted earlier, this Court does not believe supplemental proceedings to determining attorney's fees would be appropriate. *Hensley*, 461 U.S. at 437; *Certain Real Estate Prop.*, 838 F.2d at 1564-65.

fully in the instant litigation. Indeed, NMWA also prevailed on the NEPA "range-of-alternatives" claim that the State did not pursue at all in its briefing.

The Tenth Circuit simultaneously addressed NMWA and the State's complementary claims that BLM inadequately analyzed habitat fragmentation and so could not proceed absent a supplemental EIS. *See New Mexico*, 565 F.3d at 705-06. That fact does not render NMWA ineligible for a fee award for time spent on that claim. The Court has found no law holding that a party cannot recover for time spent pursuing claims entirely independent of an EAJA-ineligible party who has a different constituency and perspective. Moreover, the Government Defendants offer no evidence to support their argument that New Mexico would have briefed these alternatives. *Love v. Reilly*, 924 F.2d at 1495. Rather, this position ignores the fact that the retainer agreement between the State and its counsel set a cap on the State's litigation costs limiting compensation to $165,000 for fiscal years 2005-2008. Because there was no more State money to be had, State counsel could not have independently developed and briefed the range of alternatives argument as fantasized by BLM. The State's retained counsel, Steven Sugarman, affied:

> Given limitations on available resources and the number and complexity of the claims, this strategy was necessary to adequately address all the issues and successfully prosecute the case. Further, as a practical matter, the Court's page limits did not permit each plaintiff to fully brief all the issues in the case. Therefore, to avoid duplication of effort and to assure the adequate development of all the legal claims in the case, Belin & Sugarman and Earthjustice each took the lead on a subset of legal claims in the case, with the intent to rely on each other's briefing.

Sugarman Decl. ¶ 5. When the work is thus divided, it would hardly serve the purposes of the EAJA to deprive a party of fees for their lead role on the subset of claims they actually carried. *Pettyjohn v. Shalala*, 23 F.3d 1572, 1575 (10th Cir. 1994).

Nor does the fact one of the Plaintiffs, the Sierra Club, fails to meet the qualifications of the EAJA require any limits on the award of fees and costs. *Love v. Reilly*, 924 F.2d at 1495. The BLM Defendants have the burden of proving any special circumstances that would disqualify or limit such fees. *Id*. Not only has BLM failed to do so, once again the only evidence in the record defeats their argument. The Sierra Club contributed only $2,862.80 to this litigation and NMWA deducted this amount. NMWA Br. Chief at 10-11; Angell Decl. ¶ 9. BLM also implies that the Sierra Club's representative lied when she declared that the Club would not have pursued this case absent the other parties. BLM Resp. at 23 n. 10. Because there is no basis to assume that an officer of the Court perjured herself, this Court will decline to do so.

### *Amount of EAJA Award*

#### *Attorney's fees*

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Generally "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not

have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Gonzalez v. Astrue*, 564 F. Supp. 2d 317, 319 (D.N.J. 2008).

The BLM Defendants assert a gallimaufry of challenges to NMWA's billing records. They do not, however, meet Defendants' burden. Initially, the Court notes it is totally inappropriate for the Government to attempt claim as equivalent and thus to limit NMWA's attorneys to the amount authorized to the two private attorneys representing the State. It is incongruous for Defendants to agree that the State was fully willing and able to prosecute the entire action on its own, *see* BLM Resp. at 12-16, and also rely on the State's attorneys' contractually-capped billable hours to argue that NMWA's hours were excessive. *See supra* at 8-12.

Subject to the statutory rate, EAJA requires that fees "be based upon prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A). A reasonable hourly rate is that charged by lawyers of reasonably comparable skill, experience, and reputation for similar legal services in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 & n. 11 (1984). NMWA requests hourly rates at the statutory cap of $125 per hour, adjusted for increases in the cost of living based on their results and because the standard market rates for NMWA's attorneys exceed that amount. Courts routinely award EAJA fees at this adjusted rate. *E.g., Harris v. R.R. Ret. Bd.*, 990 F.2d 519, 521 & n. 1 (10th Cir. 1993); *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001). In fact, the Tenth Circuit recently described $125 as "the fixed starting hourly rate under EAJA." *Hackett v. Barnhart*, 475 F.3d 1166, 1168

(10th Cir. 2007). Indeed, the BLM Defendants do not dispute that they have retained Mr. Angell and has associates at higher rates.

BLM also asserts that NMWA's failure to prevail on its argument that BLM was required to consider an alternative designating Wilderness Study Areas ("WSA") warrants an additional deduction. BLM Resp. at 21. On this the Court agrees. When a discreet theory is totally unsuccessful, attorney time should not be compensated. *Jean v. Nelson*, 863 F.2d 759, 771 (11th Cir. 1988); *Int'l Center for Tech. Assessment v. Vilsack*, 602 F. Supp. 2d 228, 232 (D.D.C. 2009). Given the fact that BLM no longer has the legal authority to make such a designation, the cost efficiency of this choice also raises questions as to the property of assessing fees and costs on this issue. The Court's review[8] of Plaintiffs' billing records indicates 5.0 hours of Mr. Angell's time and 2.8 hours of Ms. Zaccardi's time should thus be excluded from the final billing.

*NMWA's Costs and Expenses*

*Expert Witness Costs*

The EAJA specifically authorizes recovery of "the reasonable expenses of expert witnesses [and] the reasonable cost of any study, analysis, engineering report, test or project ... necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A); *Childress v. Sullivan*, 742 F. Supp. 1088, 1089 (D. Colo. 1990); *The Sweetwater v. United States*, 75 Fed. Cl. 214, 217 (2007).

---

[8] Since the specifics at this point were not briefed, either party is free to point to other evidence in the record on this point.

**NMWA retained Ted J. Case, an expert on habitat fragmentation, to advise it on how oil and gas development impacts habitat fragmentation on the Mesa. NMWA also retained Dr. Walter Whitford to conduct site visits to examine the ecological characteristics of the Mesa, collect data on BLM reclamation areas, and prepare declarations expressing his expert opinion on the impacts of oil and gas development to the Mesa's vegetation, soil, and fauna. The professional services of Drs. Case and Whitford were required for NMWA's successful prosecution of this case and are compensable under EAJA. 28 U.S.C. § 2412(d)(2)(A). NMWA is entitled to $3,677.25 in expenses for expert services.**

### *Conclusion*

**NMWA should prepare a judgment in accordance with this opinion.**


**DATED this 25th day of May, 2011.**


*[signature: Bruce D. Black]*
_____
**BRUCE D. BLACK**
**Chief Judge**